IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TERESA DOLAS, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 07-1068-HU |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

RORY LINERUD
PO Box 1105
Salem, Oregon 97308

     Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITTANA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

LEISA A. WOLF
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiff Teresa Dolas ("Dolas") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

For the following reasons, I recommend the Commissioner's decision be AFFIRMED.

## PROCEDURAL BACKGROUND

Born in 1967, Dolas completed a bachelor's degree. Tr. 82, 96.[1] In October 2002 Dolas reported work as a metal polisher, delivery person, and army paramedic between an unspecified date and 1996. Tr. 104. Dolas also reported self-employment as a beautician in February and March 2002. Tr. 379, 386.

Dolas applied for DIB on October 1, 2002, alleging disability since August 9, 1996. Tr. 82, 84. Dolas alleges disability due to bipolar disorder, post-traumatic stress disorder ("PTSD"), paranoid schizophrenia, and fibromyalgia. Tr. 90. The Commissioner denied Dolas's application initially and upon reconsideration. Tr. 56-58, 61-65. An ALJ held hearings on October 19, 2005, and February 15, 2006 (tr. 985-1067) and subsequently found Dolas not disabled. Tr. 15-29. At the end of the second hearing Dolas was thirty nine. The Appeals Council denied Dolas's request for reconsideration and the ALJ's decision became final on May 18, 2007. Tr. 6-8.

## MEDICAL BACKGROUND

Dolas's medical record before this court opens in June 1996 when a medical source identified

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket #8).

as Minot Cleveland, without further credentials, diagnosed depression and fatigue. Tr. 923. In April 1999 nurse practitioner Henninger diagnosed panic disorder, generalized anxiety disorder, and rule-out diagnoses of dysthymia and major depression. Tr. 248. Dolas received medication and therapy from mental health nurse practitioners throughout 1999. Tr. 241-48.

In February 2000 physicians diagnosed "myofascial pain" limited to the rhomboid muscle group and carpal tunnel syndrome. Tr. 511, 520-21. Dolas reported headaches, "kidney pain," an alleged seizure, carpal tunnel syndrome, and cervical spine pain in March and April 2000. Tr. 511-14. In May 2000 Veteran's Administration ("VA") psychologist Dr. Turner diagnosed "moderate to severe" panic disorder without agorophobia, "severe" major depression without psychosis, and post-traumatic stress disorder ("PTSD") based upon childhood abuse. Tr. 509. Between May and September 2000 nurse practitioners assessed PTSD, depression, and panic disorder. Tr. 499-502. In October 2000, Dolas had surgery removing a wrist ganglion. Tr. 239-40, 250-52. In November 2000, Dolas reported an ecstatic mood without any pain or anxiety. Tr. 497.

On June 12, 2001, nurse practitioner Donlon-Silvestri assessed PTSD, depression, and panic disorder. Tr. 478. On June 18, 2001, Dolas sought voluntary psychiatric hospitalization for her panic disorder and depression, and was subsequently hospitalized two days. Tr. 443-76. Following her discharge, Dr. Turner conducted therapy sessions with Dolas between June and December 2001. Tr. 422-39.

In January 2001 Dolas sought emergency care for an acute migraine. Tr. 494. Also in January 2001 Dolas reported that she experienced hallucinations and at this time received a diagnosis of bipolar disorder with psychosis. Tr. 229-31. Finally, Dolas told nurse practitioner Thomasec in January 2001 that she experienced migraines with total body pain, and believed she had

3 - FINDINGS AND RECOMMENDATION

fibromyalgia.   Tr. 496.   In March 2001 examining physician Dr. Barkhuizen performed a fibromyalgia evaluation and diagnosed fibromyalgia and chronic fatigue.  Tr. 236-38.  In June 2001 nurse practitioner Harrison noted Dolas's complaints of "severe" back pain and found this pain "related to" fibromyalgia, without further explanation.  Tr. 453.  In November 2001 Dr. Barkhuizen again diagnosed fibromyalgia and chronic fatigue syndrome.  Tr. 485.

Dolas continued therapy with Dr. Turner in early 2002.  Tr. 392, 415.  In January 2002 she presented at the emergency room reporting slurred speech, difficulty concentrating, foot drop, confusion, headaches, and sleepiness.  Tr. 411.  Objective assessment showed confusion, slurred speech, decreased motor skills, and emotional instability.  Tr. 412.  Imaging studies were normal and a neurologist found her complaints "most likely psychiatric."  Tr. 224, 351-54.  Dolas continued therapy with Dr. Turner throughout 2002.  Tr. 362-87, 767-79, 781-84.  In December 2002 Dolas presented at the emergency room and received a diagnosis of acute psychosis with a history of schizophrenia.  Tr. 308.  Dolas again requested hospitalization for medication management, but this request was denied because a bed was not available.  Tr. 358, 751.

In January 2003 a head CT showed normal results.  Tr. 254.  Dolas also attended a physical therapy consult in January 2003.  Tr. 655.  In February 2003 VA examining physician Dr. Mitchell assessed major depressive disorder, chronic fatigue syndrome, possible myofascial pain syndrome which he found "clouded by depression," possible schizophrenia, and migraine headaches.  Tr. 733.

Between December 2002 and March 2003 Dolas sought an increase in her service connected VA disability rating.[2]   In March 2003 a VA examining physician diagnosed myofascial pain

---

[2]Dolas received an eighty percent service-connected VA disability determination in 2000. Tr. 202.

4 - FINDINGS AND RECOMMENDATION

syndrome "consistent with fibromyalgia" involving a trigger point associated with the right rhomboid muscle groups. Tr. 294-97, 711. Also in March 2003 Dr. Turner amended his diagnoses to include major depressive disorder, bipolar disorder with manic psychosis requiring "aid and assistance," PTSD due to incest and military sexual trauma, panic disorder with episodic agorophobia, and a cognitive disorder. Tr. 332. On March 19, 2003, Dr. Turner also wrote that Dolas has a gross impairment in short term memory, a poor prognosis, and found her unable to manage her own funds. Tr. 714-23.

Dolas received treatment for respiratory and viral illnesses in 2004. Tr. 666-89. In April 2004 a medical source without identified credentials, Sandra Feren, assessed bipolar disorder. Tr. 687. In May 2004 Dolas reported a psychotic episode by telephone to a nurse, Elizabeth Hobbs. Tr. 680-81.

Dolas sought treatment for headaches and anxiety throughout 2005. Tr. 855-909. During this time nurse practitioner Ang continued to assess major depressive disorder. Tr. 903-09.

In May 2006 Dr. Turner submitted a form endorsing various mental health limitations to Dolas's counsel. Tr. 983. Dr. Turner endorsed "extreme" limitations in Dolas's ability to remember locations and work-like procedures, understand, remember, and carry out detailed instructions, perform activities within a schedule, and sustain an ordinary routine without supervision. Tr. 983. Dr. Turner also endorsed "extreme" limitations in Dolas's ability to work with others without distraction, make simple work-related decisions, complete a normal workday without interruption, interact with the public, get along with co-workers, maintain socially appropriate behavior, respond appropriately to changes in a work setting, maintain awareness of workplace hazards, travel in unfamiliar places, or set realistic goals. Tr. 984. Dr. Turner provided no explanation or basis for

5 - FINDINGS AND RECOMMENDATION

these limitations.  This is the last entry in the record before this court.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  If the claimant does not have such a severe impairment, she is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment medically meets or equals a "listed" impairment in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  This evaluation includes assessment of the claimant's statements regarding her impairments.  20 C.F.R. § 404.1545(a)(3).  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 C.F.R. § 404.1520(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can perform her past relevant work, she is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of her

6 - FINDINGS AND RECOMMENDATION

past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

Dolas challenges the ALJ's evaluation of her credibility and the medical evidence. Dolas subsequently challenges the ALJ's finding that she could perform work in the national economy at step five in the sequential proceedings.

## THE ALJ'S FINDINGS

The ALJ found Dolas's affective disorders ("depressive disorder or depressive type bipolar disorder"), anxiety disorder, fibromyalgia, obesity, and migraines "severe" at step two in the sequential proceedings. Tr. 20. At step three, the ALJ found that Dolas's impairments did not medically meet or equal a listed impairment. Tr. 21. The ALJ assessed Dolas's RFC:

> [T]he claimant has the residual functional capacity to perform a reduced range of light exertional work. Lifting is limited to 20 pounds occasionally and 10 pounds frequently. The claimant can stand/walk for two hours in an eight-hour day. The claimant can sit for about six hours in an eight hour day, consistent with the reporting by Dr. Johnson (Exhibit 8F). In regard to the claimant's

7 - FINDINGS AND RECOMMENDATION

> psychological impairments, consistent with the testimony of Dr.
> Dragovich, the claimant is precluded from occupations requiring
> ongoing public service, she needs to avoid work environments
> requiring rapid changes, and although she can have some contact with
> coworkers, she is unable to work as an integral part of a team.

Tr. 21.  The ALJ subsequently found that Dolas may perform her past relevant work as a security

guard and delivery driver.  Tr. 29.  The ALJ therefore found Dolas not disabled at any time through

the date of his decision.  *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record.  42

U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193

(9th Cir. 2004).  This court must weigh the evidence that supports and detracts from the ALJ's

conclusion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th 2007)(citing *Reddick v. Chater*, 157

F.3d 715, 720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the

Commissioner.  *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id.*, *see*

*also Batson*, 359 F.3d at 1193.

## DISCUSSION

Dolas claims the ALJ inappropriately evaluated her credibility and her obesity.  Dolas also

claims that the ALJ proffered incomplete questions to a vocational expert and failed to develop the

record.

////

8 - FINDINGS AND RECOMMENDATION

### I.     Credibility

Dolas asserts that the ALJ "never addressed [her] testimony," (Pl.'s Opening Br. 14) and that the ALJ failed to include Dolas's described limitations in her RFC.  Pl.'s Opening Br. 12-13.  The ALJ found Dolas's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms" not entirely credible.  Tr. 22.  The ALJ cited Dolas's activities of daily living, inconsistent statements and her medical record.  Tr. 28-29.  The court reviews this analysis sequentially.

#### a.     Activities of Daily Living

The ALJ noted Dolas's 2002 work activity as a beautician and tattoo artist (tr. 19, 24), and her ability to perform household maintenance, care for small children, and home school her teenage son. Tr. 27-28.  The ALJ also noted that Dolas repeatedly drove approximately 140 miles when she claimed to have debilitating migraine headaches. Tr. 26.  The ALJ concluded that Dolas performs "normal daily activities and maintained interest and a social life . . . in spite of her impairments." Tr. 29.  While a claimant need not "vegetate in a dark room," *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987),  the ALJ may consider a claimant's activities of daily living.  *Smolen*, 80 F.3d at 1284.  The ALJ appropriately noted these activities and this finding should be affirmed.

#### b.     Inconsistent Statements

The ALJ also found Dolas's statements inconsistent.  Tr. 28.  The ALJ first noted that Dolas's work activity as a tattoo artist contradicted her allegation that she cannot maintain focus. Tr. 25. The ALJ also noted that Dolas made inconsistent reports to treating psychologist Dr. Turner. Tr. 23, 25.  The ALJ may note such inconsistent reporting regarding symptoms. *Smolen*, 80 F.3d at 1284.  This finding should be affirmed.

### c.    Medical Record

The ALJ found that the medical record did not establish that Dolas's alleged seizures in July 2002 were medically determinable. Tr. 26. The record supports this assessment. Repeated neurological examinations, including imaging studies, did not show evidence of seizure or stroke. Tr. 228, 22-231, 370. The ALJ may consider physician observations together with other factors in assessing the claimant's credibility. *Smolen*, 80 F.3d at 1284. The ALJ's reference to the medical record is based upon the record and should be affirmed.

In conclusion, the ALJ appropriately considered Dolas's activities of daily living, inconsistent statements, and treatment record in finding her symptom allegations not credible. The ALJ therefore was not obliged to include these reports in his RFC assessment. Dolas fails to show that the ALJ erroneously omitted her symptom testimony from his RFC assessment. The ALJ's credibility finding should be affirmed.

## II.    Obesity

Dolas asserts that the ALJ failed to properly discuss her obesity after finding it a "severe" impairment at step two in the sequential proceedings. Pl.'s Opening Br. 10. The ALJ's RFC must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2).

Dolas failed to raise an obesity argument at her hearing, where she was represented by counsel. She cannot now raise it for the first time before this court. *Burch*, 400 F.3d at 682. However, because the ALJ found Dolas' obesity severe, the court will consider her present submissions.

Dolas specifically asserts that the ALJ failed to consider her fatigue, sleep disorder, and back pain in concert with her obesity. Pl.'s Opening Br. 11. Dolas testified that her psychological

impairments are the primary source of her alleged disability. Tr. 1039. She presented no evidence

that her obesity effects her fatigue, sleep disorder, and back pain. Additionally, Dolas's submission

before this court fails to articulate any explanation of the impact of her obesity.

Neither Dolas's recitation of her medical history, nor her argument cite to the record

pertaining to her obesity. Pl.'s Opening Br. 3, 9-11. The claimant bears the burden of establishing

the effects of an impairment between steps one and four of the sequential proceedings. *Yuckert*, 482

U.S. at 146 n5; *Tackett*, 180 F.3d at 1098. Dolas has not met this burden.

For these reasons, Dolas fails to show that her obesity effects her impairments, and fails to

show that the ALJ's omission of these effects in his RFC assessment prior to step four of his analysis

constitutes reversible error.

### III.    Failure to Develop the Record

Dolas asserts that the ALJ failed to develop the record regarding her RFC assessment and her

mental impairments. Pl.'s Opening Br. Pl.'s Opening Br. 15, 16-18.

The Ninth Circuit has clearly stated that the ALJ's duty to develop the record is triggered

when evidence is insufficient or when ambiguities arise. *Bayliss*, 427 F.3d at 1217. For example,

the Ninth Circuit ordered an ALJ to recontact a physician when ambiguities arose concerning the

disability onset date for a claimant who was later determined to be disabled. *Armstrong*, 160 F.3d

587, 590 (9th Cir. 1998).

While the ALJ is not a "mere umpire," *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1991),

the burden of establishing disability remains upon the claimant. *Yuckert*, 482 U.S. at 146; *Bayliss*,

427 F.3d at 1217 (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)). No authority

suggests that the regulations require the ALJ to continually develop the record until disability is

established.   Rather, the Social Security regulations require the ALJ to assist the claimant in developing a complete record.  *Yuckert*, 482 U.S. at 146.

Dolas asserts that the ALJ should have asked treating psychologist Dr. Turner "how he arrived at plaintiff's mental capacities."  Pl.'s Opening Br. 17.  The ALJ considered Dr. Turner's reports in detail.   The ALJ specifically noted that Dr. Turner relied upon Dolas's inconsistent reporting.  Tr. 23, 25, 27.  The ALJ may reject medical source opinions predicated upon testimony of a claimant found not credible.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ also noted that Dr. Turner's reports were inconsistent, that he submitted his February 2006 limitations while no longer treating Dolas, and that Dr. Turner provided no support for these limitations.  Tr. 27-28.  The ALJ may reject medical source opinions that are brief, conclusory, and inadequately supported by clinical notes or findings.  *Bayliss*, 427 F.3d at 1216.

Dolas reasons that the ALJ should have obtained a consultative psychological examination because Dr. Turner allegedly refused to provide psychological testing results.  Pl.'s Opening Br. 17. However, Dolas retains the burden of providing medical evidence supporting her impairment. *Yuckert*, 482 U.S. at 146 n5.  No authority suggests an ALJ must develop the record when a treating sources's opinion is not properly supported.  The burden of establishing disability remains upon Dolas, and she has not established that the record is insufficient or contains ambiguities warranting further development by the ALJ.

IV.     **Vocational Expert's Testimony**

At step four in the sequential proceedings the ALJ found that Dolas could return to her past relevant work as a security guard or delivery driver.  Tr. 29.  The ALJ based this finding upon a vocational expert's testimony.  *Id.*

Dolas asserts that the ALJ failed to solicit appropriate testimony from the vocational expert. Pl.'s Opening Br. 8. Dolas specifically asserts that the ALJ's question to the vocational expert cited "light" work, which exceeds the ALJ's RFC limitation to standing two hours during an eight hour day. *Id.* Under the Commissioner's regulations, "light" work may require "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). The ALJ's questions to the vocational expert cited "light" work and did not restrict Dolas from standing or walking. Tr. 1057-58. Dolas is therefore correct in asserting that the ALJ's question to the vocational expert contradicted Dolas's RFC assessment.

However, the vocational expert testified that a security guard position "could be only two hours" standing. Tr. 1063. The ALJ may rely upon the vocational expert's expertise. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The security guard position as the vocational expert described it is thus compatible with the ALJ's two-hour standing and walking limitation.

Finally, the court again notes that the burden remains upon Dolas at step four in the sequential proceedings. *Yuckert*, 482 U.S. at 146 n5; *Tackett*, 180 F.3d at 1098. Dolas has not established that she cannot perform her past relevant work as a security guard. This finding should therefore be affirmed.

## CONCLUSION

In summary, this court finds that the record supports the ALJ's finding that Dolas did not suffer from a disabling condition. Dolas fails to show that the ALJ inappropriately evaluated her combined impairments in reaching his RFC determination. Dolas additionally fails to show that the ALJ's step four finding, based upon substantiated vocational testimony, were erroneous. The ALJ's findings should therefore be affirmed.

////

13 - FINDINGS AND RECOMMENDATION

### RECOMMENDATION

The Commissioner's decision that Dolas did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence.  The Commissioner's decision should be AFFIRMED and the case should be dismissed.

### SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due November 17, 2008.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due December 1, 2008, and the review of the Findings and Recommendation will go under advisement with the District Judge on that date.

IT IS SO ORDERED.

DATED this _31st day of October, 2008.

/s/ Dennis J. Hubel

Dennis James Hubel
United States Magistrate Judge